Mr. Rosenberg, I see you reserved two minutes for rebuttal, and you can begin whenever you're ready, Mr. Rosenberg. Thank you, Your Honors. Jonathan Rosenberg, I'm an attorney for the appellate, Asa Saint Clair, who was convicted in this case for one count of wire fraud following a jury trial. May I please report? This was a case that began as an unlawful intrusion into the defendant's phone electronics in search, and I'll say in search of a crime, because they suspected my client of criminality. And ultimately, it supports the proposition that, for the most part, nearly anything can be a wire fraud that involves an accusation of misleading or misrepresentation under that statute. But that's not, I guess, the issue in this case, primarily. We have the most strong issues of the warrant issue, the illegal search. It's a general warrant that was pursued in this case. It was a broad warrant. It was preserved, we believe, very much by the initial motion of the lower court. It was a- When you say it's a general warrant, it authorized the seizure of evidence concerning the identity and location of communications of WSA employees with respect to the subject offenses of foreign government officials. That doesn't sound like a general warrant to me, right? It allowed them to ultimately take the ambiguity of what was the place he lived and the place he was employed, and go in there and take his personal effects without probable cause. We don't believe probable cause was established in this case. Well, let me take it a step at a time. They had evidence that the company, I know it was many years prior, but that there was fraud at the company, right? That was in the warrant, correct? No, Your Honor, my understanding was they didn't suspect fraud at the company. They suspected, well, no, securities fraud in 2013-2014. I'm sorry, securities fraud. They also suspected, and your client, he's running the company out of, this is a small company, right? How many employees? Three? Two other people? It was probably around three. All right, so he's running this company out of his home, right? Yes. Technically, I mean, the record would reflect it's certainly an ambiguity. Okay, well, he had the documents for the company there, right? He was served a subpoena there. But there was no criminal suspicion as to Mr. St. Clair, who joined the company. But if he's, if they're looking for evidence of the fraud, and the documents of the company are there, they're about to get the documents. If they have that, obviously, they need probable cause. But the documents of the company were there, and the government points out that there was an obstruction in 2018. That was in the warrant. I believe, okay, go ahead. Sorry, Judge. Did I get the date wrong? Or is it in 2018 or not? The warrant, yes. I think there was also a 2019 warrant. No, the obstruction. When was the alleged obstruction? I thought it was alleged to have taken place. Well, the statute of limitations would allow it to go up to 2018 obstruction. And that obstruction also involved fraudulent documents as well, right? That was the allegation with respect to the obstruction, right? I don't think it was that clear with the affidavit to the court. And I think they were looking for something very much unrelated to the new guy who was running what was, for the most part, I think, a legitimate operation. The entire accusation, and going right to the weight of the evidence, Your Honor. You said for the most part. For the most part. Yeah. I'm basing it off the record. For the most part. I mean, I'm being asked, for example, if the organization at a certain time was suspected of securities fraud, I think it had some skeletons in its closet from a time before he was working there. It's a question of time. It's a question of time that you said. Oh, very much. It's a cookie-cutter period of time. The government will all just hear. But then when the subpoena is served, fraudulent documents are produced. So that brings it, that gives the warrant some currency. But that's the thing. They didn't prove they were fraudulent documents. They said, oh, one source alleged these were fraudulent documents. There was no analysis or reason to believe they were fraudulent documents produced. They would have pursued that, obviously, I think, had there been fraudulent documents or securities fraud. They pursued the one kind of wire fraud because that's what this whole warrant nonsense turned into. It turned it into an ability to bring a new case. Let's say the probable cause to believe your client was involved in the destruction of justice involving a document fraud. They did not accuse my client of anything involving a document destruction. There was no belief that at least was submitted to the judge that my client was a criminal at the time. No, that's separate from whether or not there's probable cause to believe that evidence of criminality will be found at the location. That's separate from probable cause to arrest your client. That's correct, Judge. Okay. So sticking with the probable cause to think that evidence of criminal conduct or criminality would be found at this location. You have the past conduct. You have the perpetrator of that past conduct still operating using the same location. And then you have a subpoena that when served for document results in the production of purportedly fraudulent documents. Together, why doesn't that give a judicial officer probable cause to think that further criminal evidence will be located there? Because in this case, the agents, we believe, misled the court as to what they were really doing. We think this was a pretext because they were already investigating, I think, this individual. They already were in the process of trying to find some reason to go after this individual. I'm not sure I understand you. Before the district court, I understood you were arguing staleness. Now you're arguing particularity and over-breath. And are you now on oral argument arguing that they misled, that there were misrepresentations in the warrant affidavit? The argument seems to be shifting. I want to be sure I understand what you're arguing is the defect here. It was not good faith at the very least. On what? On the fact that there was no basis to presume there was fraudulent documents provided to the government. They had a witness who told them that they were fraudulent. But once they knew, and I believe at this time the record shows that they knew there was no security squad or anything with WSA. On paragraph 14B, your client accepts services subpoena. He supplies documents. In paragraph 14C, the government says they sent a request to the Central African Republic seeking agreements related to what their client produced. And they got a response back that there were no such concessions granted. So that was the belief of why they believed that documents that your client produced in response to a subpoena relating to the company were fraudulent because they contacted the Central African Republic who said it never happened. So why isn't that – I know – the question is, is that probable cause to believe that the company was involved in an obstruction and that your client, who's producing the documents that they say were fraudulent, was part of that obstruction? You said there was no allegation your client was involved in an obstruction. But that sounds like if your client produced documents that the government is saying, based upon their conversation with the Central African Republic, are fraudulent, that sounds like probable cause, right? It doesn't sound like probable cause. And just because the Central African Republic is saying something that contradicts – The documents were agreements between WSA and the Central African Republic. And the Central African Republic says there were no such agreements. That's not fraud? That's not probable cause for fraud when the government says there were no such agreements? Right. Your Honor, under Galpin, we're relying on the fact that they went into the premises. They didn't just take electronics within the scope of the warrant. They went further because they didn't just care about what was in the scope of the warrant. They were targeting Mr. Asa St. Clair because they believed he was a criminal. But he wasn't part of the company or the organization, I should say, at the time that these allegations, these so-called securities fraud allegations had been happening. He wasn't related to that time period. He was merely a person who was a facilitator of providing documents. All right. Thank you. You have your two minutes for rebuttal. Thank you, Mr. Rosenberg. Thank you, Judge. You don't want to hear any more about – About what? Could I continue? You have two minutes for rebuttal. Thank you. Okay. Are you going to talk about some other point or on the search warrant? Yes, Your Honor, if I could just add something. I know insufficiency is a very weak issue generally on appeal. I understand that in this case it's an issue that you want to give deference to the jury. That's the court's standard, obviously. It's concerning that there was a relationship clearly with the United Nations prior to the time period. And there was a relationship with the United Nations that was after the time period of election 2019 where he held a sports tournament with the agency, where there was a landmine cooperation with the agency. I think it's concerning that the jury got the view that there was no relationship. Perhaps in that time period it had gone cold, as he testified, and he had tried to reignite it, right, reestablish it. He did reestablish it. This was an unripe prosecution. Had an investor, just jumping out at the investors, had anybody had an issue, a civil claim would have been appropriate. We don't prosecute cases when a civil claim could at least figure out if it was even wrongdoing by somebody, but the government went in and a cryptocurrency was actually created. All right. Thank you, Mr. Rosenberg. Okay, Judge. You can amplify that in your rebuttal. Thank you. Thank you. I'll hear from the government. Good morning. May it please the court. My name is Emily Dininger, and I represent the United States in this appeal, as I did in the district court. And the judgments of conviction in this case should be affirmed. I will focus on the issues related to the search warrant, unless your honors have questions on any of the other issues, but there was no basis to suppress the evidence seized pursuant to the 2019 premises search warrant. The probable cause for the warrant was not stale because it was based on events that had occurred in the prior year, specifically the World Sports Alliance provision of documents related to the earlier securities fraud, including records that, as was just discussed, appear to have been fabricated based on information that was provided from the Central African Republic. And, moreover, the records sought were electronic and business records that were likely to have been obtained by an organization for a lengthy period of time. So it was reasonable for Magistrate Judge Lerenberg to determine that there was probable cause that evidence of these crimes, both the obstruction of justice and the underlying securities fraud, would still be present at the premises and in electronic devices present at the premises. With regard to particularity and over breadth, the defendant waived those arguments. They were never raised below. The agents, moreover, acted in good faith, if there were any concern about the warrant, in executing the warrant in reliance on the magistrate's determination that there was probable cause. And as we discussed in our briefs, even if all of that was not true, the failure to suppress would be harmless because there were only three documents obtained from the search warrant that were admitted at trial. And on that point, I want to note the defendant has focused primarily on the electronic devices that were seized, arguing that there was an unbridled, unwarranted search. There was no evidence from any electronic device seized pursuant to the search warrant that was admitted at trial. There was also no unbridled search. The warrant permitted seizure of electronic devices from the premises. They were searched pursuant to the targeted categories that were listed in the search warrant, and later a supplemental search warrant was obtained so that they could be searched for evidence of the wire fraud. May I ask you, I know that your argument is that over breadth and particularity were forfeited, but am I correct that there was no temporal limits on the materials that could be seized? That is correct. There was no temporal limit included in the warrant, and the government acknowledges that it would be best practice to include one. It is generally our practice to include one. All right. I just wanted to be sure that I understood that. You do. The situation correctly? We don't believe that's fatal to the over breadth. Was the warrant drafted by an assistant in your office? It was. Okay. And you understand the problem without the temporal limits? We do, and we don't, again, believe it is fatal here because the warrant was limited by reference to the subject offenses, and because of the type of record sought and the long period of time covered by the criminal conduct, we believe that it had sufficient particularity. But, yes, it is best practice. How old was this company? How far back did the company go? When was it formed? If you don't know, I don't know if that's in the record or not. I believe it is in the record. I believe it was formed in 2007 or 2008. And one thing that I want to specifically address that defense counsel raised was that the search warrant was that the agents misled the magistrate judge, that this was all a pretext because the defendant was being targeted. That is not true, and there's no evidence of that in the record. There was an ongoing investigation into the securities fraud, whether or not there was a broker-dealer that had committed Bank Secrecy Act violations, whether there was the obstruction of justice, and I just want to note on that point that, in fact, there was a case and a defendant that was charged with securities fraud related to the sub-pump-and-dump fraud scheme in February 2020, shortly after this search warrant was executed. So, again, this was a search warrant that was very much obtained in good faith in furtherance of ongoing investigations. I'm happy to take any questions that Your Honors might have on any other issues. Otherwise, I will rest. Thank you. All right, Mr. Rosenberg, you have two minutes. Briefly, Your Honors, let me correct that more clearly. Misled was not the proper term, obviously. I think the term was mistaken, or I used a word that was not proper. I can't get into the heads of people trying to do their job in law enforcement. I think we all understand that. Let me just ask you about insufficiency. There's a WhatsApp message where your client sent to the president of WSA in April 2018 saying that they lost more sales due to the lack of U.N. affiliation. Why doesn't that indicate knowledge with respect to this critical issue that there was no U.N. affiliation? What's the explanation for that? Well, I think it certainly cooled down during that period. What's remarkable is it actually made it. What does that mean, cooled down? Well, I'm using his own testimony, which I think is accurate. The jury can reject that. Well, they sent a letter to him saying, leave us alone, but then they started working with him again. I mean, this is the U.N. I know, but you understand the insufficiency argument. We have to shoot the evidence most favorably to the government. Even your client said, well, that meant that it cooled down. The jury's allowed to say, no, there was zero relationship at that time. Isn't the jury allowed to do that? The jury is allowed to do that, and I think it is our weakest argument on the record. It has to be. The warrant issue is stronger. We raised so many of them through all the issues in the warrant. Staleness is a big one, and we did preserve them. We have a section, and obviously in our brief, and a reply, well, more than a reply, that specifically touches on the language of preservation as to particularity as to staleness over breadth. I'm not trying to conflate all those terms either. They all have a specific, special meaning in this case, and I would ask the court to give them their special, specific meanings as to what warrants this court has ruled should be permitted under the Fourth Amendment of the United States Constitution. We do have a standard we need to hold up here. I appreciate it very much. Thank you. Thank you both. We'll reserve decision. Have a good day.